**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MERITPLAN INSURANCE COMPANY,
a corporation,

                Plaintiff,

-vs-                                                      Case No. 8:04-cv-881-T-24EAJ

JOHN AND IRENE LAUGHLIN,
husband and wife,

                Defendants.
_____/

JOHN LAUGHLIN,

                Plaintiff,

-vs.-                                                     Case No. 8:04-cv-1208-T-24EAJ

MERITPLAN INSURANCE COMPANY,
a corporation,

                Defendant.
_____/

## O R D E R

This cause comes before the Court for consideration of Plaintiff Meritplan Insurance's ("Meritplan") Motion for Summary Judgment (Doc. No. 44) and Motion for Partial Summary Judgment on Unavailable and Incurred Coverages (Doc. No. 45).[1]  Defendants, John and Irene Laughlin ( the "Laughlins"), filed responses in opposition thereto (Doc. Nos. 49 and 50).  On

---

[1]On August 27, 2004, this Court granted Meritplan's Motion to Consolidate (Doc. No. 9 in case number 8:04-cv-1208-T-24EAJ).  There are two operative complaints consolidated in lead case number 8:04-cv-881-T-24EAJ.  This Order pertains to the complaint originally filed in case number 8:04-cv-881-T-24EAJ.

March 4, 2005, this Court granted Meritplan's motion to amend and consolidate Meritplan's motion for partial summary judgment and motion for summary judgment *nunc pro tunc* (Doc. No. 55).

## I.     Procedural History

The complaint originally filed in case number 8:04-cv-881-T-24EAJ involves a dispute over a property insurance claim filed by the Laughlins[2] with respect to property located at 12805 College Hill Drive in Hudson, Florida. In its complaint, Meritplan seeks a declaratory judgment as to its rights under the terms of the insurance policy (Count I) and asserts a claim for breach of contract against the Laughlins for failing to mitigate their damages after loss (Count II). On September 2, 2004, this Court denied the Laughlins' motion to dismiss and directed them to respond to the complaint (Doc. No. 18).

On September 16, 2004, the Laughlins filed their answer, affirmative defenses and a counterclaim against Meritplan alleging breach of contract for failure to pay all the benefits under the insurance policy (Doc. No. 21). On December 22, 2004, this Court entered an Order granting Meritplan's motion to strike the Laughlins' affirmative defenses and granting the Laughlins until January 4, 2005, to file an amended answer (Doc. No. 33). Also on December 22, 2004, this Court denied Meritplan's motion to dismiss the Laughlins' counterclaim and directed Meritplan to respond to the Laughlins' amended counterclaim no later than ten (10) days after it was filed (Doc. No. 34).

On December 31, 2004, the Laughlins filed their amended answer and a counterclaim

---

[2]The Laughlins previously advised the Court that Defendant John Laughlin was the only named insured on the insurance policy and that Defendant Irene Laughlin was not specifically named on the insurance policy.

alleging breach of contract for failure to pay all benefits (Count I) and breach of contract for failure to tender actual cash value (Count II) (Doc. No. 36).  On January 25, 2005, Meritplan filed an answer and affirmative defenses to the amended counterclaim (Doc. No. 41).  Meritplan now moves for summary judgment arguing that: (1) Meritplan is not in breach of the insurance policy as it complied with the terms and conditions of the policy and extended payment per the terms of the policy, (2) the Laughlins are in breach of the policy as they failed to perform reasonable repairs and mitigate their damages, and (3) the Laughlins' repudiation of the policy relieved Meritplan from performing under the policy (Doc. No. 45).  Meritplan also moves for partial summary judgment in its favor arguing that the Laughlins are not entitled to coverage for "landscaping, loss of use, other structures, debris removal and loss of value to residence" (Doc. No. 45).

## II. Factual Background

Meritplan insured the property located at 12805 College Hill Drive in Hudson, Florida under homeowner's policy number THM567869 from January 19, 2002 to January 19, 2003.  On or about May 11, 2002, the Laughlins reported settlement damage to the property.  Meritplan investigated the Laughlins' claim and hired a geotechnical engineer who concluded that sinkhole activity caused the damage to the Laughlins' property.  Sinkhole activity is a covered peril under the Laughlins' homeowner's insurance policy.

Meritplan extended coverage for the loss and obtained bids from various sinkhole remediation companies.  On or about September 11, 2003, more than fifteen months after the Laughlins reported damage to the property, Meritplan tendered a check in the amount of $47,879.60.  Meritplan arrived at the $47,879.60 amount by taking a mean average of the

remediation and repair bids obtained by Meritplan. Meritplan alleges that the tender was made on "an as incurred basis, with the caveat that additional funds would be available, up to the policy limit, provided that the repairs were incurred to the residence." (Doc. No. 1). The Laughlins argue that the tendered amount was not agreed to and did not reflect the actual cash value of the damage to the home (Doc. No. 36).

In response to the Laughlins' concerns about the method of remediation[3], Meritplan hired a second geotechnical engineering firm, SDII Global ("SDII"), to investigate the loss and advise as to the appropriate means of remediation. Meritplan alleges SDII rendered a report which indicated that grouting alone was required to remediate the subsurface of the Laughlins' residence. SDII's report has not been made a part of the record before this Court.

On March 18, 2004, the Laughlins demanded an appraisal.[4] Meritplan refused to participate in the appraisal process, claiming there was not yet a dispute as to the amount of the

---

[3]Specifically, whether grouting alone, or grouting and pin piling was necessary to repair the residence.

[4]The insurance policy includes the following appraisal provision:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
>
> Each party will:
>  A. Pay it's own appraiser; and
>  B. Bear the other expenses of the appraisal and umpire equally.

loss.[5]

### III.    Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim.  See id.  When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and

---

[5]On April 19, 2004, prior to the filing of the instant lawsuit, John Laughlin filed a complaint in the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County.  In the complaint, Plaintiff John Laughlin seeks a declaratory judgment regarding the right to demand an appraisal pursuant to an insurance policy.  Meritplan removed the case to this Court (8:04-cv-1208-T-24EAJ). However, the Court notes that John Laughlin's action for declaratory judgment is not directly before the Court on Meritplan's motion for summary judgment.

resolve all reasonable doubts in that party's favor. See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**IV**.    **Discussion**

Meritplan's motion for summary judgment and motion for partial summary judgment rely largely on the Laughlins' failure to timely respond to Meritplan's request for admissions which were served on or about June 14, 2004. However, on March 4, 2005, Magistrate Judge Jenkins granted the Laughlins' motion to reopen discovery and permit withdrawal or amendment of their responses to the request for admissions (Doc. No. 53). Specifically, Magistrate Judge Jenkins

granted the Laughlins ten (10) days to serve amended responses to Meritplan's request for admissions. The Laughlins have now served Meritplan with amended responses to Meritplan's request for admissions (Doc. No. 56).[6]

However, since the motions and the responses were filed prior to discovery being reopened, the Court will review Meritplan's motions based upon the evidence in the record at the time the motions and responses were filed.

    A.    <u>Meritplan's Compliance with the Terms of the Insurance Policy</u>

Meritplan argues it is entitled to summary judgment since it has "fully complied with its obligations to the Laughlins under the terms of their insurance policy." Specifically, Meritplan asserts that the terms of the insurance policy do not provide "that Meritplan has an obligation to return the dwelling to its pre-loss condition." Rather, Meritplan contends it is "only required to pay either the actual cash value of the repairs or the replacement cost of the repairs" (Doc. No. 44). Meritplan contends that despite the tender of the $47,879.60 no repairs have been made to the Laughlins' residence.

The Laughlins deny that "they have not begun repairs to their residence" (Doc. No. 36). Furthermore, the Laughlins deny that they have failed to mitigate their damages, failed to make reasonable repairs to the property or "that they have neglected the property or that they have been neglectful in any way" (Doc. No. 36). The Laughlins now contend that they were relieved of any duty to mitigate damages since payment was not tendered by Meritplan until more than fifteen months after they reported the claim and that the amount tendered was not the actual cash

---

[6]The Laughlins filed a Notice of Compliance with Court Order (Doc. No. 56) but did not file a copy of their amended response to Meritplan's request for admissions.

value[7] of the damage as required by the insurance policy (Doc. No. 50).

The Laughlins previously filed[8] with the Court a proposal for sinkhole repairs[9] to the Laughlins' residence from Sinkhole Resolution Company dated March 28, 2003, which states that underpinning is necessary in addition to grouting to prevent future cracking to the home (Exh. D, Doc. No. 26). The proposal from Sinkhole Resolution Company totals $92,600.00 and that amount is included the Laughlins' Insured's Statement of Claim dated June 30, 2003 (Doc. No. 5 in 8:04-cv-1208-T-24EAJ). Furthermore, the Laughlins have filed the Affidavit of Margaret Bender, a licensed adjuster, who opines that "the amount of the check tendered to the Laughlins for repairs to their home, totaling $47,879.60, did not represent the actual cash value of the damages at the Laughlin residence" (Exh. G, Doc. No. 50).[10]

Florida[11] follows the "Broad Evidence Rule" for determining the actual cash value of damaged property. See Barrett v. Prudential Prop. and Casualty Ins. Co, 790 F. 2d 842, 844 (11th Cir. 1986)(citing Worcester Mutual Fire Ins. Co v. Eisenberg, 147 So. 2d 575, 576 (Fla. App. 1962)). A sworn proof of loss statement and contractor's estimate for repair work can constitute probative evidence from which a jury can base a determination as to actual cash value

---

[7]The Court notes that in Count II their counterclaim, the Laughlins allege that the policy of insurance is "vague and ambiguous regarding the meaning of Actual Cash Value and the manner in which it will be calculated."

[8]In response to Meritplan's motion to dismiss the Laughlins' counterclaim (Doc. No. 26).

[9]The Court notes that the proposal did not include amounts for cosmetic repairs to the Laughlins' residence.

[10]The Affidavit references an Exhibit "A" which was not attached.

[11]The Court applies Florida law since the parties have consistently cited to Florida case law and all acts giving rise to the dispute occurred in the state of Florida.

of the damage.  See Barrett, 790 F.2d at 845; see also J & H Auto Trim Co., Inc. v. Bellefonte Ins. Co., 677 F.2d 1365, 1369 (11th Cir. 1982).  Based upon the Laughlins' statement of claim in excess of $92,600.00 and the affidavit of Margaret Bender, there is genuine issue of material fact as to whether Meritplan complied with the terms of the insurance policy by tendering the actual cash value of the repairs.

      B.    <u>Defendants Breached the Policy by Failing to Make Repairs</u>

The insurance policy states in relevant part:

In case of a loss to covered property, you must see that the following are done:

- a. Give prompt notice to us or our agent; . . .
- d. Protect the property from further damage.  If repairs to the property are required, you must:
  - (1) Make reasonable and necessary repairs to protect the property; and
  - (2) Keep an accurate record of repair expenses; . . .
- f. As often as we reasonably require:
  - (1) Show the damaged property;
  - (2) Provide us with records and documents we request and permit us to make copies; and
  - (3) Submit to examination under oath, while not in the presence Of any other 'insured," and sign the same;
- g. Send to us, within 60 days after our request, your signed, sworn proof of loss . . ..

Meritplan contends that in failing to make reasonable repairs or mitigate their damages, the Laughlins have breached the terms of the insurance policy (Doc. No. 44).  Meritplan further contends that its contractual duty was discharged by the Laughlins' repudiation of their contractual obligation, i.e., that they would not undertake to repair the property.  The Laughlins respond that they had insufficient funds to begin proper repairs based upon the amount of money tendered by Meritplan.  The Laughlins also contend that Meritplan breached the contract first at the time of tender of the $47,879.60 and therefore they were discharged from any contractual

duty to mitigate damages.

The Court finds there is a genuine issue of material fact as to whether Meritplan breached the insurance policy by tendering an unagreed upon repair amount fifteen months after the Laughlins submitted their claim. Furthermore, to the extent that the Laughlins were required to "protect the property from further damage," this Court is unable to determine from the record before it what repairs were reasonable and necessary to protect the property.

    C.    <u>Partial Summary Judgement on Unavailable and Incurred Coverages</u>

Meritplan contends that during the claim process, the Laughlins sought "an entitlement to damages for: (1) loss of use, (2) landscaping, (3) special damages a/k/a loss of value damages, (4) debris removal, and (5) other structures" (Doc. No. 45). Meritplan argues that under the terms of the insurance policy, certain expenses must be incurred to trigger entitlement to additional benefits, i.e., loss of use coverage and debris removal. Since the Laughlins have not proven that such policy benefits have been incurred, or that a specifically enumerated peril caused the damage, Meritplan argues it is entitled to partial summary judgment on the issue of entitlement to these "unavailable coverages and additional coverages which must be incurred." Additionally, Meritplan contends that there are no "other structures" located on the property.

The Laughlins respond that coverage for these items has never been claimed "nor are they the basis of an action before this Court." Specifically, the Laughlins concede that they have not made a claim for coverages which must first be incurred pursuant to the policy of insurance, including loss of use, landscaping and debris removal. They further concede that they have not made a claim for special damages a/k/a loss of value. However, the Laughlins go on to state that "coverage for Other Structures may be an available coverage which is subject to a factual dispute

and may provide coverage for driveways, sidewalks, or coverage for other structures on the property" (Doc. No. 49). The Laughlins' statement in their affidavit that "they believe that coverage for other structures may exist for their loss" (Exh. C, Doc. No. 49) is insufficient to raise a genuine issue of material fact regarding the availability of coverage for other structures. See Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc., 479 F.2d 135, 139 (5th Cir. 1973)[12] (recognizing rule in summary judgment context that "affidavits containing mere conclusions have no probative value"(citation omitted)). There is no evidence in the record that "other structures" are located on the Laughlins' property. Accordingly, partial summary judgment in Meritplan's favor is appropriate on the availability of entitlement to damages for: (1) loss of use, (2) landscaping, (3) special damages a/k/a loss of value damages, (4) debris removal, and (5) other structures.

## V.   Conclusion

To the extent the dispute between the parties involves the amount of loss, versus coverage under the policy, the amount of loss is an appropriate subject for appraisal. However, this Court cannot direct the parties to appraisal, as sought by the Laughlins,[13] until it has made a determination that the Laughlins have fulfilled their post-loss obligations or are otherwise discharged of any contractual liability to mitigate damages. See Allstate Ins. Co. v. Suarez, 833 So. 2d 762, 765 (Fla. 2002); see also Jacobs v. Nationwide Mutual Fire Ins. Co., 236 F.3d 1282, 1286 (11th Cir. 2001). This Court has insufficient evidence in the record to make those

---

[12]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent those decisions of the Former Fifth Circuit rendered prior to October 1, 1981.

[13]Case number 8:04-cv-1208-T-24EAJ.

determinations.

Therefore, having considered the motions, it is **ORDERED AND ADJUDGED** that:

(1) Meritplan's Motion for Summary Judgment (Doc. No. 44) is **DENIED**;

(2) Meritplan's Motion for Partial Summary Judgment on Unavailable and Incurred Coverages (Doc. No. 45) is **GRANTED**.

**DONE AND ORDERED** at Tampa, Florida, this 29th day of April, 2005.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record